Paul C. Wilson, Judge
A jury convicted Travis Williams ("Williams") of three counts of first-degree statutory sodomy. See § 566.062.1, RSMo.[1] The circuit court sentenced Williams as a predatory sexual offender to three concurrent sentences of life imprisonment without the possibility of parole for 50 years. See § 558.018.2. Williams appealed, and the court of appeals transferred the case to this Court on the ground that the appeal raised an issue within the exclusive appellate jurisdiction of this Court as set forth in article V, section 3, of the Missouri Constitution. That issue is whether article I, section 18(c), added to the Missouri Constitution in 2014, violates due process.
Article I, section 18(c) is an amalgam of Federal Rules of Evidence 414 and 403. Every federal circuit that has considered a similar due process challenge has rejected it. See, e.g., United States v. LeMay , 260 F.3d 1018, 1024-27 (9th Cir. 2001) (rejecting claim, in part because of the protections provided by Rule 403, that Rule 414 violates due process on its face); United States v. Castillo, 140 F.3d 874, 881 (10th Cir. 1998) (same).[2] For similar reasons, this Court rejects Williams's due process challenge to article I, section 18(c).
This Court also rejects Williams's claims that the circuit court misapplied this provision either: (1) by failing to make an express finding the probative value of Williams's prior conviction was not substantially outweighed by the prejudicial effect of that evidence, or (2) by admitting that evidence even though its probative value was substantially outweighed by its prejudicial effect. Accordingly, the judgment is affirmed.
Background
In November 1996, Williams, then 26 years old, pleaded guilty to first-degree statutory sodomy for inserting his thumb in a minor child's vagina. He was sentenced to five years in prison but, after completing a 120-day program in a sex offender assessment unit, execution of his sentence was suspended and he was placed on probation for five years. In 1999, Williams violated his probation and his *279 sentence was executed. Williams was released from prison in 2003.
Shortly after Williams was released from prison, he began dating T.W. ("Mother"), the biological mother of M.E.E. ("Victim"). Early in their relationship, Williams informed Mother he had a prior conviction for sexually molesting a young girl. Mother continued to maintain a relationship with Williams and later introduced Williams to M.E. ("Father"), Victim's biological father. At the time, Mother and Father were still living together. When Father discovered Williams was a registered sex offender, he repeatedly told Mother he did not want Williams around the children. In February 2004, Mother left Father and took Victim and Victim's two older siblings with her. Shortly thereafter, Mother allowed Williams to move in with her and her children. In 2005, Mother married Williams.
The first instance of abuse to which Victim testified occurred in 2008, when she was roughly eight years old. Victim recalled she stayed home from school to recover from an illness. Williams was the only other person in the home at the time. Victim and Williams were eating candy and, when Victim said she wanted the last piece, Williams told her she could not have it unless she took "off all [her] clothes and let him play with [her] butt." Williams eventually coerced Victim into taking off all her clothes in his bedroom and touched her bottom while playing with himself. Williams continued to abuse Victim until the latter part of 2013 by touching Victim's genitals and bottom and by forcing her to perform manual and oral sex acts upon him, usually when no one else was home. The frequency of Williams's abuse declined after Williams and Mother separated in 2012, though Williams continued to abuse Victim on some occasions.
In September 2013, Victim reported Williams's abuse to the police. Shortly thereafter, the state charged Williams with three counts of first-degree statutory sodomy.[3] The state subsequently filed an information in lieu of indictment alleging Williams should be sentenced as a predatory sexual offender.
Pursuant to article I, section 18(c) of the Missouri Constitution, the state filed a pretrial motion to admit evidence of Williams's 1996 conviction on the ground it demonstrated his propensity to commit the offenses with which he was charged. Over Williams's objection, the circuit court granted the state's motion but specified that, unless the parties later disagreed, the state would be limited to proving Williams's prior plea by way of a stipulation.
The case was tried to a jury in February 2015. Over Williams's objection,[4] the stipulation was read to the jury. At the end of the three-day trial, the jury convicted Williams of all three counts of first-degree statutory sodomy. After the jury rendered its verdicts, Williams moved for a new trial on several grounds. The circuit court overruled Williams's motion, concluded he was a predatory sexual offender in light of his prior conviction, and sentenced him to three concurrent sentences of life in prison without the possibility of parole for 50 years. Williams appeals, and this Court has jurisdiction under article V, section 3, of the Missouri Constitution.
*280 Analysis
Williams challenges the constitutionality, proper construction, and application of article I, section 18(c), which Missouri voters added to the Missouri Constitution in 2014. In its entirety, this section provides:
Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.
Mo. Const. art. I, § 18(c). This amendment was adopted with the evident purpose of abrogating State v. Ellison , 239 S.W.3d 603, 607-08 (Mo. banc 2007), and its progeny.
Williams raises three main points. First, he contends article I, section 18(c), on its face, violates due process. Second, Williams contends the circuit court erred in admitting evidence of his 1996 guilty plea and conviction for first-degree statutory sodomy without first making an express finding that the probative value of this evidence was not substantially outweighed by its danger of unfair prejudice. Finally, Williams contends the circuit court erred in admitting evidence of his prior criminal act because the danger of unfair prejudice from that evidence substantially outweighed its probative value. The Court rejects each of these contentions.
I.
Williams argues article I, section 18(c), on its face, violates due process[5] because it allows admission of evidence of prior criminal acts in the prosecution's case-in-chief to prove a defendant has the propensity to commit the charged crime. Williams must bear a heavy burden to prevail on this claim because there is "a strong presumption in favor of [the amendment's] validity." Wilson v. Washington Cty. , 247 S.W. 185, 187 (Mo. 1922). Williams can overcome this presumption only by demonstrating the admission of propensity evidence pursuant to the amendment-in any case and under any circumstances-violates due process. See State v. Jeffrey , 400 S.W.3d 303, 308 (Mo. banc 2013) (a party raising a facial challenge must show there is "no set of circumstances ... under which the [challenged law] may be constitutionally applied").
To prove the amendment violates due process, Williams must show that admitting propensity evidence pursuant to the amendment "offends some principle of justice so rooted in the traditions and conscience *281 of our people as to be ranked as fundamental." Montana v. Egelhoff , 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (citation omitted). To make such a showing, Williams must demonstrate a rule forbidding the use of propensity evidence in prosecutions for sex offenses committed against minors is a "fundamental principle of justice." Id. Historical practice is this Court's primary guide in deciding whether there is such a rule and whether that rule is a "fundamental principle of justice." Id. "Judges are not free, in defining 'due process,' to impose ... our 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' " United States v. Lovasco , 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (quoting Rochin v. California , 342 U.S. 165, 170, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ).
As a starting point, it is safe to say a general prohibition against the use of propensity evidence in criminal cases has been firmly engrained in American jurisprudence throughout much of the nation's history.[6]
Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.
Michelson v. United States , 335 U.S. 469, 475-76, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (citation and footnotes omitted). Since Michelson , the Supreme Court has continued to praise the common law tradition of excluding propensity evidence, e.g. , Old Chief v. United States , 519 U.S. 172, 180-82, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), though it has never squarely held due process forbids the admission of propensity evidence in the prosecution's case-in-chief, e.g. , Estelle v. McGuire , 502 U.S. 62, 75 n.5, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
But even if this Court were to conclude the general ban against propensity evidence is "so rooted in the traditions and conscience of our people as to be ranked as fundamental," Egelhoff , 518 U.S. at 43, 116 S.Ct. 2013, this would not aid Williams's argument. Article I, section 18(c) does not purport to allow the use of propensity evidence in all criminal cases. Instead, the amendment only allows the use of such evidence "in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age." The historical practice regarding the use of propensity evidence in these limited circumstances *282 weighs decidedly against Williams. See LeMay , 260 F.3d at 1025 (historical practice has routinely, if not uniformly, allowed the use of propensity evidence in such circumstances).
The practice of admitting evidence of the defendant's prior sexual misconduct for purposes of proving the defendant's propensity to commit the sex offense with which he was charged has long been a feature of American law. See People v. Jenness , 5 Mich. 305, 320 (1858) ("[C]ourts in several of the states [have] shown a disposition to relax the rule [barring propensity evidence] in cases where the offense consist[ed] of illicit intercourse between the sexes."). See also Leonard, supra , § 3.3.6 at 145-55 (examining sex offense cases and concluding some nineteenth century courts "almost certainly violated the ban on character as circumstantial evidence of conduct" in such cases); Thomas J. Reed, Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases , 21 Am. J. Crim. L. 127, 168-69 (1993).[7]
By the early part of the 20th century, a significant number of state courts allowed the introduction of evidence of sexual misconduct between a defendant and his victim (of any age) for the purpose of proving the defendant's propensity to commit the sex offense with which he was charged. See, e.g. , Reed, supra , at 169-82. See also L.S. Tellier, Annotation, Admissibility, in Prosecution for Sexual Offense, of Evidence of Other Similar Offenses , 167 A.L.R. 565 (1947) (collecting authorities). At the time, this rule was characterized as a well-recognized exception to the general ban on propensity evidence. For example, in State v. King , 119 S.W.2d 277, 283 (Mo. 1938), this Court explained the admission of a defendant's prior sexual misconduct with the victim for propensity purposes is "almost universally ... allowed in prosecutions for crimes involving the sexual relation, such as adultery, incest, lewdness, rape, seduction, and sodomy." See also People v. Swift , 138 N.W. 662, 666-67 (Mich. 1912) (explaining that a "long recognized and well established" exception to the "rule that the prosecution may not prove another and distinct offense of the same kind for the purpose of rendering it more probable that [the defendant] committed the offense for which he is on trial ... [applies] in prosecutions involving sexual offenses"); State v. Clough , 132 A. 219, 221 (Del. Ct. Gen. Sess. 1925) (explaining this "exception to the general rule allowing proof of other crimes in the prosecution of sexual offenses is of widest recognition").
Many of these cases dealt with sexual offenses against minors, such as statutory rape. See Reed, supra , at 171 ("By the 'roaring 20s,' twenty-three American jurisdictions admitted evidence of prior sexual misconduct between defendant and victim in statutory rape cases to prove the defendant's lustful disposition.") (footnote omitted). In State v. Palmberg , 199 Mo. 233, 97 S.W. 566, 568 (Mo. 1906), this Court noted the use of prior sexual offenses against minors to prove the defendant's propensity to commit the charged crime of statutory rape was supported by "the weight of authority." See also State v. Peres , 27 Mont. 358, 71 P. 162, 163 (1903) (opining that "the great weight of authority" allows the admission of evidence of prior sexual misconduct between the defendant and the victim in statutory rape cases for the purpose of "corroboration," "explanation," or showing "the relation and familiarity of the *283 parties").[8]
Today, many-if not most-jurisdictions admit evidence of a defendant's prior sexual misconduct in prosecutions for sexual offenses against a minor. A substantial number of jurisdictions do so by rule or statute.[9] In states without a rule or statute, courts admit evidence of a defendant's sexual misconduct through "a 'lustful disposition' or sexual proclivity exception to the general rule barring the use of [propensity] evidence." 1A John Henry Wigmore, Evidence in Trials at Common Law § 62.2, at 1335 (Tillers rev. 1983). See also Reed, supra , at 200 ("A surprising number of ... jurisdictions ... retain one version or another of the lustful disposition rule alongside the more modern character evidence rules."). Even states that do not expressly admit propensity evidence as such will admit it by claiming it is not truly propensity evidence.[10] See, e.g. , Wigmore, supra , § 62.2, at 1335 (asserting many of the "rationales are often fiction rather than fact"); Dix, et al., supra , § 190 ("[C]ourts in many of the jurisdictions that still do not overtly admit evidence of sex crimes with other victims as revealing an incriminating propensity achieve a similar result by stretching to find a nonpropensity purpose.") (footnotes omitted); Leonard, supra , § 9.4.2, at 596-97 ("[D]espite broad-based academic criticism of unlinked plan theories, the case reporters contain countless child sexual molestation prosecutions adopting the 'common scheme or plan'
*284 theory.") (footnotes omitted); Reed, supra , at 207-08.
Finally, and of particular note, Federal Rule of Evidence 414 allows the use of evidence in federal cases that the defendant committed a prior act of child molestation for the purpose of demonstrating propensity to commit the act of child molestation with which defendant is charged. See Fed. R. Evid. 414(a). In rejecting a challenge that Rule 414 is unconstitutional on its face, the Ninth Circuit Court of Appeals conducted an historical survey similar to the one above and concluded:
On the one hand, it seems clear that the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status....
On the other hand, courts have routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions. In many American jurisdictions, evidence of a defendant's prior acts of sexual misconduct is commonly admitted in prosecutions for offenses such as rape, incest, adultery, and child molestation. Today, state courts that do not have evidentiary rules comparable to Federal Rules 414 through 415 allow this evidence either by stretching traditional 404(b) exceptions to the ban on character evidence or by resorting to the so-called "lustful disposition" exception, which, in its purest form, is a rule allowing for propensity inferences in sex crime cases. Thus, "the history of evidentiary rules regarding a criminal defendant's sexual propensities is ambiguous at best, particularly with regard to sexual abuse of children." [ Castillo, 140 F.3d at 881.]
LeMay , 260 F.3d at 1025-26 (some internal citations omitted).
In rejecting the due process challenge to Rule 414, LeMay not only concludes the historical practice is "ambiguous," it also relies heavily on the protections provided by Rule 403. Under Rule 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice." Joining every federal circuit court to address the question, LeMay holds the protections of Rule 403 rebut a challenge that Rule 414 violates due process on its face.
Although this court has never squarely addressed the issue of whether Rule 414 and its companion rules are constitutional, we have recently held that the balancing test of Rule 403 continues to apply to those rules, and that district judges retain the discretion to exclude evidence that is far more prejudicial than probative. See Doe by Glanzer v. Glanzer, 232 F.3d 1258, 1268 (9th Cir. 2000) (rejecting claim that Rule 415, which allows for introduction of prior sexual misconduct in civil sexual assault or child molestation cases, eliminates balancing protections of Rule 403 ).
With the protections of the Rule 403 balancing test still in place, LeMay's due-process challenge to Rule 414 loses much of its force. The evidence [of prior sexual crimes against minors] was indisputably relevant to the issue of whether he had done the same thing [in the charged crime]. The introduction of relevant evidence, by itself, cannot amount to a constitutional violation.
Likewise, the admission of prejudicial evidence, without more, cannot be unconstitutional. All evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case....
The introduction of such evidence can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value.... Potentially devastating evidence of little or no relevance would have to be excluded under *285 Rule 403. Indeed, this is exactly what Rule 403 was designed to do. We therefore conclude that as long as the protections of Rule 403 remain in place so that district judges retain the authority to exclude potentially devastating evidence, Rule 414 is constitutional.
Several courts have reached the same conclusion. In Castillo, for example, the Tenth Circuit noted that "[a]pplication of Rule 403... should always result in the exclusion of evidence" that is so prejudicial as to deprive the defendant of his right to a fair trial, and that "application of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414." 140 F.3d at 883. Applying nearly identical reasoning, the Tenth Circuit has also affirmed the constitutionality of Rule 413, which allows for propensity inferences in rape and sexual assault cases. See [ Enjady, 134 F.3d at 1430-35 ]. Other courts have agreed. See, e.g., [ Mound, 149 F.3d at 800-802 ] (concluding that Rule 413 passes constitutional muster if Rule 403 protections remain in place); United States v. Wright, 53 M.J. 476 (C.A.A.F. 2000) (same); Kerr v. Caspari, 956 F.2d 788, 790 (8th Cir. 1992) (holding that a Missouri rule allowing for propensity inferences in sex crime prosecutions is constitutional as long as Rule 403 test is applied).
We join these courts in holding that Rule 414 does not violate the Due Process Clause of the constitution. The admission of relevant evidence, by itself, cannot amount to a constitutional violation. Nor does the admission of even highly prejudicial evidence necessarily trespass on a defendant's constitutional rights. Thus, the claim that Rule 414 is unconstitutional can be reduced to a very narrow question: "whether admission of ... evidence that is both relevant under Rule 402 and not overly prejudicial under 403 may still be said to violate the defendant's due process right to a fundamentally fair trial." Castillo, 140 F.3d at 882. As the Castillo court noted, "to ask that question is to answer it." Rule 414 is constitutional on its face.
LeMay , 260 F.3d at 1026-27. See also Schaffer , 851 F.3d at 180 ("[P]ropensity evidence may cause 'undue prejudice' to a defendant and, as a result, threaten his right to a fair trial. However, ... the protections provided in Rule 403... effectively mitigate the danger of unfair prejudice resulting from the admission of propensity evidence in sexual-assault cases."); Mound , 149 F.3d at 800-01 (" Rule 413, subject to the constraints of Rule 403, is constitutional."); Castillo , 140 F.3d at 883 ("[A]pplication of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414."); Enjady , 134 F.3d at 1433 (10th Cir. 1998) ("Considering the safeguards of Rule 403, we conclude that Rule 413 is not unconstitutional on its face as a violation of the Due Process Clause.").
The reasoning of this unbroken line of federal decisions is particularly persuasive because the language of article I, section 18(c) is taken directly from the Federal Rules of Evidence. The first sentence of the amendment is functionally equivalent to Rule 414, and the second sentence tracks the language of Rule 403 nearly word for word.[11] Based upon LeMay and the other federal decisions, therefore, this Court rejects Williams's claim that *286 article I, section 18(c) violates federal due process on its face.[12]
II.
Williams also argues that, before propensity evidence can be admitted, article I, section 18(c) requires the circuit court to make an express finding on the record that the probative value of the evidence is not substantially outweighed by its danger of unfair prejudice. Because he claims the circuit court made no such express finding in this case, Williams contends the circuit court erred in admitting evidence of his 1996 conviction. The Court rejects this argument and holds the circuit court is not required to make an express finding of legal relevance before admitting evidence under article I, section 18(c), provided the record reflects a sound basis for the balancing the amendment requires.[13]
Williams's argument appears to be based on the risk that, without an express *287 finding of legal relevance, there is no assurance the circuit court actually conducted the balancing required by the second sentence of article I, section 18(c). Though the Court shares Williams's concern, the record in this case shows the circuit court admitted the evidence of Williams's prior criminal act only after carefully considering the probative value of-and the risk of unfair prejudice from-that evidence and concluded (albeit implicitly) the latter did not substantially outweigh the former. Nothing in the text of article I, section 18(c) requires more and, as explained in the following section, the record in this case is adequate to permit appellate review of the circuit court's decision to admit this evidence.
Williams makes his argument without reference to the text of article I, section 18(c). This is understandable because nothing in the amendment imposes the requirement for an express finding of legal relevance that he seeks. This Court is not free to impose requirements not included in the amendment, either in its express language or by necessary implication. See State v. Collins , 328 S.W.3d 705, 709 n.6 (Mo. banc 2011) ("This Court may not engraft upon [a] statute provisions which do not appear in explicit words or by implication.") (citation omitted). Because article I, section 18(c) does not require the circuit court to make an express finding of legal relevance before admitting propensity evidence, the circuit court did not err in failing to do so.
III.
Finally, Williams argues the circuit court erred in admitting evidence of his 1996 conviction under article I, section 18(c) because the probative value of this evidence was outweighed by its danger of unfair prejudice. The Court rejects this claim and affirms the circuit court's evidentiary ruling.
The circuit court's decision to admit evidence of Williams's 1996 guilty plea under article I, section 18(c), like all claims of evidentiary error, is reviewed for an abuse of discretion. State v. Prince , 534 S.W.3d 813, 818 (Mo. banc 2017). The circuit court's evidentiary ruling "will not be disturbed unless it is clearly against the logic of the circumstances." Id. (quotation marks and citations omitted). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." Anglim v. Missouri Pac. R. Co. , 832 S.W.2d 298, 303 (Mo. banc 1992).
*288 As held in the preceding section, nothing in the language of article I, section 18(c) requires the circuit court to make an express finding of legal relevance before admitting propensity evidence. Even though the circuit court is not required to make this finding in so many words, it nevertheless is essential that the evidence meet the balancing test for legal relevance set forth in the second sentence of the amendment. Evidence in the record that the circuit court analyzed relevant factors and engaged in the balancing required under article I, section 18(c) makes it possible for appellate courts to review the circuit court's evidentiary ruling with the level of deference that the "abuse of discretion" standard requires. Here, the record shows the circuit court-though it made no express finding of legal relevance before admitting Williams's 1996 guilty plea-carefully considered relevant factors and admitted the evidence only after being convinced its probative value was not substantially outweighed by its danger of unfair prejudice. See LeMay , 260 F.3d at 1028 (noting "although the district judge did not discuss the specific factors ..., the record reveals that he exercised his discretion to admit the evidence in a careful and judicious manner").
The state gave Williams notice nearly three weeks before trial that it intended to offer evidence of his 1996 conviction for first-degree statutory sodomy. Williams moved to exclude that evidence, and the circuit court heard argument from the parties. These arguments addressed both the probative value of the evidence (including similarities between and the amount of time between the prior act and the charged) and the danger of unfair prejudice from this evidence. The circuit court considered whether any unfair prejudice could be mitigated by limiting either the extent of the evidence or the manner in which the evidence would be presented. The circuit court ultimately concluded it would permit the state to use the evidence, stating, "I believe ... that it is a relevant piece of evidence for the jury to hear because it is close enough in time and the charge that he was charged with matches the factual allegations that are contained in the current case." The circuit court stated it would "limit" the evidence "to a stipulation of the facts that he has already pled guilty to so that we would not require the victim to come in," because "that would help with not creating a prejudice for Mr. Williams." Finally, the circuit court stated it would "increase the jury pool in this matter so that there will be enough panel members available to be questioned with regards to this matter."
The determination of how much and what kind of probative value particular propensity evidence may have, the nature and extent of the danger of unfair prejudice presented by that evidence, and whether the former is substantially outweighed by the latter, are intensely case-specific questions. The relevant factors to be considered in deciding these questions will vary from case to case, as will the weight to be afforded any one factor in particular. As a result, the factors set forth in this opinion, and the weight given to those factors, are merely illustrative of the legal relevance analysis article I, section 18(c) requires.
Before propensity evidence can be said to have any probative value, it must be sufficient for the jury to conclude the defendant actually committed the prior criminal act. See Huddleston v. United States , 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (evidence of a prior criminal act "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."); Kenneth W. Graham, Jr., 22B
*289 Federal Practice and Procedure: Federal Rules of Evidence § 5259 (2d ed. 2015). Here, Williams pleaded guilty to the 1996 charge, removing any doubt as to whether he had committed the criminal act, and the evidence of his 1996 conviction came in principally by way of a stipulation read to the jury. Accordingly, there was ample evidence for the jury to conclude the act described in the stipulation occurred.
But that is not enough. To be probative (i.e., logically relevant), the evidence of the prior criminal act must tend to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred. See State v. Anderson , 76 S.W.3d 275, 276 (Mo. banc 2002) ("Evidence is logically relevant if it tends to make the existence of a material fact more or less probable."). This is the source of the circuit court's concern with the similarity between the prior criminal act and the charged crime and with the amount of time between the two. Indeed, the two considerations are inversely related. Prince , 534 S.W.3d at 820. For example, an inference of propensity might be proper notwithstanding a significant time lapse between the prior crime and the charged crime if the two crimes are highly similar. On the other hand, an inference of propensity might not be proper if the prior crime and the charged crime are only somewhat similar unless the two occurred over a short span of time. Here, the circuit court properly noted the prior crime and the charged crime were: (1) highly similar, given both involved Williams touching a young girl's vagina; and (2) close in time.[14]
Finally, in determining the probative value of a particular item of propensity evidence, courts have looked to the prosecution's need for that evidence to prove its case. See United States v. Byrd , 352 F.2d 570, 575 (2d Cir. 1965) ("Another factor to be considered is whether the Government was faced with a real necessity which required it to offer the evidence in its main case."); Graham, Jr., supra , § 5259. In LeMay , the court stated:
[C]ourts must consider whether the prior acts evidence was necessary to prove the case. This factor also supports the government's position and indicates that the district judge did not abuse his discretion in admitting the evidence. The prosecution's case rested on the testimony of [the boys]. No other scientific, forensic, medical, or psychological witness was available. LeMay had attacked the credibility of the boys and capitalized on the lack of eyewitness and expert testimony. That the prosecutor claimed that she could get a conviction without introducing LeMay's prior acts of molestation does not suggest that the evidence was not "necessary." Prior acts evidence need not be absolutely necessary to the prosecution's case in order to be introduced; it must simply be helpful or practically necessary.
LeMay , 260 F.3d at 1029 (emphasis in original). See also Bernard , 849 S.W.2d at 17 ("Because of the secretive nature of ... sexual abuse or molestation of a child by an adult, the only eyewitnesses to the crime are [usually] the defendant and the victim.... [and] [e]vidence of prior crimes ... is, therefore, probative.").
*290 Here, the state had an appreciable need to introduce evidence of Williams's prior crime. At trial, Victim was the only eyewitness who testified. Other witnesses only indirectly corroborated her testimony. In response, the defense argued that Victim was mistaken, that Victim's family misled Victim to believe Williams was abusing her, and that some of Williams's conduct-for example, lying in bed with Victim, touching her, kissing her, and buying her gifts-was innocent and had been misinterpreted by Victim and others. The unique evidentiary challenges presented by this type of case and the defense's attack upon the credibility of the state's witnesses, including Victim, enhanced the probative value of Williams's prior crime evidence.
Probative value, however, is only one side of the scale. The other side is the risk of unfair prejudice. One factor bearing on the prejudicial effect of propensity evidence is whether the jury knows or can fairly infer the defendant was punished for his past criminal acts. United States v. Beechum , 582 F.2d 898, 914 (5th Cir. 1978). If the jury is allowed to infer (or, worse, speculate) the defendant escaped punishment in the past, it may be inclined to convict merely to punish the defendant for past criminal acts rather than for the crime charged. But where-as here-the jury knows the defendant was convicted for the past criminal acts, this risk is minimized.
The danger of unfair prejudice from propensity evidence also can be a function of the manner in which the state proves the prior criminal act at trial. See Old Chief , 519 U.S. at 183, 117 S.Ct. 644 (faced with alternative means of proving prior crimes, one more prejudicial than the other, the "judge would have to make these [admissibility] calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case, and the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in"); see also Graham, Jr., supra , § 5259. In the present case, the circuit court might have allowed the state to prove Williams's prior crime by calling his former victim, who then could have described the abuse she suffered at his hands as a young girl. Such testimony, of course, would have increased the danger of unfair prejudice. That danger was minimized, however, because the defense and the state agreed to prove Williams's prior criminal act by way of a short, dispassionate stipulation.
Another factor that bears on the danger of unfair prejudice from propensity evidence is whether the evidence of the defendant's prior criminal act eclipses-or is overshadowed by-the evidence of the charged crime. See Graham, Jr., supra , §§ 5222, 5259 (describing this factor as "comparative enormity"). Evidence the defendant previously sexually abused a young child is highly prejudicial in the abstract, but there is far less danger of unfair prejudice from such evidence in a prosecution for sexually molesting a young child than there would be in a prosecution for a less heinous crime. See Lemay , 260 F.3d at 1030 ("[E]vidence of a defendant's prior acts of molestation will always be emotionally charged and inflammatory, as is the evidence that he committed the charged crimes.").
Here, the evidence of Williams's prior criminal act was far less alarming than the evidence of the charged crimes. The jurors knew from the outset it would be their duty to decide whether Williams had committed several highly disturbing crimes against a young child. Over a three-day period, the jurors were confronted with a large amount of graphic evidence, including *291 the Victim's testimony about how Williams forced her to perform a variety of sex acts upon him. Moreover, the jurors were confronted with other evidence that put Williams in a bad light. For example, Victim opined she thought she might have been Williams's favorite stepchild because he did not physically strike her as he struck her other siblings-one of whom, the jury knew, had special needs. Victim also testified Williams threatened to harm her, her siblings, and her dogs if she ever told anyone about the abuse. And Victim also testified Williams said he thought he would have married her, instead of Mother, in another life. In the context of all the evidence, the evidence of Williams's prior criminal act-introduced largely by way of a short, dispassionate stipulation-was not so jarring as to create an unacceptable danger of unfair prejudice.
Yet another factor bearing on the prejudicial effect of propensity evidence is the manner in which the state uses the evidence at trial. See Graham, Jr., supra , § 5259. If the prosecution spends an undue amount of time emphasizing the prior criminal act or flagrantly invites the jury to convict the defendant because he is a "bad" or "wicked" man rather than because he committed the crime charged, the danger of unfair prejudice from that evidence quickly becomes untenable. On the other hand, if the prosecution spends relatively little time on the issue of a defendant's prior crimes and merely uses the evidence for its proper purpose (namely, to suggest the defendant has a propensity to commit the charged crime), the danger decreases and may-on balance-not be unfair.
Williams argues the danger of unfair prejudice was unacceptably high because the state made his guilty plea the "touchstone" of its case. A review of the record, however, shows this was not so. The state devoted comparatively little time to the subject over the three-day trial. In its opening statement, for example, the state merely informed the jury they would encounter a variety of evidence, including Williams's guilty plea. This limited reference was a mere sliver of the state's opening statement. In its case-in-chief, the state read the stipulation to the jury but, as its short text makes clear, the stipulation could not have taken more than a minute to read.[15] On direct examination, the state also elicited testimony concerning Williams's prior criminal act from Mother and one of Victim's siblings. These witnesses, however, spent no more than a minute or two on the matter, and their testimony concerning Williams's criminal past was a small part of their entire testimony at trial.[16] The state also published *292 two videotaped interviews in which Victim briefly said she knew Williams was a sex offender. But nothing suggests Victim's references to Williams's criminal past were anything but fleeting. Finally, the state only mentioned Williams's prior conviction twice during its closing argument. The state first argued that, by pleading guilty to a similar criminal act in 1996, Williams essentially admitted to having a propensity to sexually abusing young girls. And the state then argued Williams's propensity for sexually abusing young girls (as shown by his guilty plea) showed he was acting for the purpose of sexual gratification when he committed these same acts against Victim. Again, these short references were only a small part of the state's closing argument. On the record before this Court, it simply cannot be said the state increased the danger of unfair prejudice in this case by unduly emphasizing Williams's prior criminal acts, and at no time did the state implicitly or explicitly invite the jury to engage in improper reasoning.
Accordingly, the evidence concerning Williams's 1996 crime had considerable probative value and the danger of unfair prejudice from that evidence was not great. This Court holds the latter did not substantially outweigh the former and, therefore, the circuit court did not abuse its discretion by admitting that evidence.
Conclusion
For the reasons set forth above, the circuit court's judgment is affirmed.
All concur.

All statutory citations refer to RSMo Cum. Supp. 2008, unless otherwise noted.

Federal circuit courts also have rejected due process challenges to Federal Rule of Evidence 413, which allows evidence of prior sexual assaults to be admitted in a trial for sexual assault. See, e.g., United States v. Schaffer , 851 F.3d 166, 177-81 (2d Cir. 2017) ("While we recognize that Rule 413 represents an exception to the general 'ban against propensity evidence,' we agree with every other court of appeals that has addressed this issue and hold that, in light of the safeguards provided by Rule 403, Rule 413 on its face does not violate the Due Process Clause."); United States v. Enjady , 134 F.3d 1427, 1430-33 (10th Cir. 1998) (same); United States v. Mound , 149 F.3d 799, 800-01 (8th Cir. 1998) (same).

Unbeknownst to the jury, the state also charged Mother with first-degree endangerment under section 568.045.1(1). Mother eventually pleaded guilty to this offense and is now on probation.

Williams agreed to admit his guilty plea by stipulation to mitigate the prejudicial effect of the evidence but maintained his objection to the substance of this evidence.

Williams relies on the due process provisions of both the state and federal constitutions. He fails to explain, however, how one provision of the Missouri Constitution can violate another provision of the same constitution. When two provisions appear to conflict, this Court has no authority to side with the provision it deems the most prudent. Instead, this Court must attempt to harmonize the provisions, giving effect to each, or if this is not possible, to determine which should take precedence in a given circumstance using standard cannons of construction, e.g., by applying the more specific or more recently enacted provision. S. Metro. Fire Prot. Dist. v. City of Lee's Summit , 278 S.W.3d 659, 666 (Mo. banc 2009). Williams argues none of these and, instead, abandons his claim under the Missouri Constitution by failing to develop that claim in the argument section of his brief.

Precisely when this common law rule first gained consistent application in this country is unclear. David P. Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events § 2.3, at 29 n.1 ("Some date the establishment of the rule to 1810, while others find evidence of it in earlier times.")

This trend, moreover, was not uniquely American. At the time, some English courts were also admitting propensity evidence in sex offense prosecutions. See Leonard, supra , §§ 2.4.1-.2, at 62, 70; see also Reed, supra , at 168 n.228.

Nor was this rule limited to prior criminal acts between the defendant and the victim. See, e.g., State v. Jenks , 126 Kan. 493, 268 P. 850, 851 (1928) (explaining evidence of a statutory rape committed upon another girl would be admissible to prove the defendant's "lustful disposition" to commit the offense with which he was charged) (citation omitted); Bracey v. United States , 142 F.2d 85, 88-89 (D.C. Cir. 1944) (observing the "better reasoned cases in other jurisdictions" allowed admission of evidence of other sexual offenses committed against other minors to prove defendant's "emotional predisposition or passion" to commit the offense with which he was charged); 1 George E. Dix, et al., McCormick on Evidence § 190 (K.S. Broun & R.P. Mosteller eds., 7th ed. 2013 & Supp. 2016) ("[M]any jurisdictions now admit proof of other sex offenses with other persons, at least as to offenses involving sexual aberrations.") (footnotes omitted).

See, e.g., Alaska R. Evid. 404(b)(2) (West 2018); Ariz. R. Evid. 404(c) (West 2018); Cal. Evid. Code § 1108(a) (West 2018); Fla. Stat. Ann. § 90.404(2)(b) (West 2018); Ga. Code Ann. § 24-4-413(a) (West 2018); 725 Ill. Comp. Stat. Ann. 5/115-7.3(b) (West 2018); La. Code Evid. Ann. art. 412.2.A (West 2018); Mich. Comp. Laws Ann. § 768.27a(1) (West 2018); Neb. Rev. Stat. Ann. § 27-414(1) (West 2018); Tex. Crim. Proc. Code Ann. § 38.37.2(b) (West 2018); Utah R. Evid. 404(c) (West 2018).

This Court's short-lived "corroboration" theory is an illustration of this approach. In State v. Bernard , 849 S.W.2d 10, 17 (Mo. banc 1993), this Court held evidence of a defendant's prior bad acts could be used to "corroborate" a claim that the defendant had committed the crime with which he was charged as long as the prior bad acts were "nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's modus operandi. " At the time, some members of this Court argued "corroborative" evidence admitted pursuant to this theory was essentially propensity evidence in disguise. See id. at 23-24 (Robertson, C.J., concurring in part and concurring in the result in part); see also id. at 26-27 (Thomas, J., concurring in part and concurring in the result in part). Years later, this Court agreed and eliminated the "corroboration" theory. State v. Vorhees , 248 S.W.3d 585, 590 (Mo. banc 2008), abrogated in part by article I, section 18(c) of the Missouri Constitution, ("Signature evidence used for corroboration is, at base, propensity evidence masquerading under the well-recognized identity exception, a category of exception in which it does not belong."). See also Leonard, supra , § 3.3.6, at 154 ("[Judicial] reliance on the admission of ... evidence to 'corroborate' and 'explain' other testimony [was] weak. Evidence that corroborates or explains other testimony is simply additional substantive evidence, to be weighed along with all other evidence.").

Williams argues article I, section 18(c) lacks the protection Rule 403 provides to Rule 414 because he claims, unlike these federal rules of evidence, the Missouri constitutional language merely allows-but does not require-the circuit court to exclude evidence when "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Notwithstanding the word "may" in Rule 403, federal courts uniformly have held propensity evidence must pass the legal relevance test in Rule 403 before it can be admitted under Rule 413 or 414. See, e.g., Schaffer , 851 F.3d at 181-82 ("Rule 403 requires a district court to exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice.") (quotation marks omitted) (emphasis added); LeMay , 260 F.3d at 1027 ("Potentially devastating evidence of little or no relevance would have to be excluded under Rule 403.") (emphasis added); Castillo , 140 F.3d at 882 ("Rule 403 excludes evidence, even if it is logically relevant, if its prejudicial effect substantially outweighs its probative value.") (emphasis added); Enjady , 134 F.3d at 1433 ("Rule 403 requires that if the trial court concludes the probative value of the similar crimes evidence is outweighed by the risk of unfair prejudice it must exclude the evidence.") (emphasis added). Because the second sentence of article I, section 18(c) is taken word-for-word from Rule 403, this Court is bound to give that language the same mandatory construction it received prior to adoption here. See Gen. Box Co. v. Missouri Utils. Co. , 331 Mo. 845, 55 S.W.2d 442, 447 (Mo. 1932) ("the law is well settled that, when one state adopts a statute of another state which the courts of that state have construed, then such construction will be held to have been adopted along with the statute"); State v. Chandler , 132 Mo. 155, 33 S.W. 797, 798 (Mo. 1896) ("when a statute or a controlling word in a statute has received adjudication in the state where the statute originated ... it will be presumed that it was adopted with the meaning which had theretofore attached to it in the state of its origin"); Felix Frankfurter, Some Reflections on the Reading of Statutes , 47 Colum. L. Rev. 527, 537 (1947) ("if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it"). Cases to the contrary, such as State v. Rucker , 512 S.W.3d 63 (Mo. App. 2017), should no longer be followed.

Williams also claims article I, section 18(c) violates his constitutional right to a jury trial. He makes no effort to distinguish this claim from his due process claim, however, nor does he cite any authority for his jury trial claim separate and distinct from the due process claim. Accordingly, this Court rejects Williams's jury trial claim for the reasons expressed above.

Again, the Court finds cases applying Federal Rule of Evidence 403 to be persuasive in reaching this conclusion. See, e.g., United States v. Smith , 725 F.3d 340, 348 (3d Cir. 2013) (express finding not required if the lower court's "Rule 403 reasoning is ... apparent from the record") (citation and quotation marks omitted); Smith v. Tenet Healthsystem SL, Inc. , 436 F.3d 879, 885 (8th Cir. 2006) (express finding not required if the correct reason for the ruling "is apparent from the record") (citation omitted); United States. v. Jackson , 84 F.3d 1154, 1159 (9th Cir. 1996) (express finding not required if a reviewing court "can conclude, based on a review of the record, that the district court considered Rule 403's requirements") (citations and quotation marks omitted); United States v. Williams , 985 F.2d 634, 638 n.6 (1st Cir. 1993) (express finding not required if "the record indicates that the district court did weigh the balance between the probative value and the prejudicial effect") (citation omitted); United States v. Osum , 943 F.2d 1394, 1401-02 (5th Cir. 1991) (express finding not required if "the factors upon which the probative value/prejudice evaluation [was] made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling") (citation and quotation marks omitted); United States v. Binkley , 903 F.2d 1130, 1136-37 (7th Cir. 1990) (express finding not required if "the factors upon which the probative value/prejudice evaluation [was] made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling") (citation and quotation marks omitted); United States v. Burk , 912 F.2d 225, 229 (8th Cir. 1990) (express finding not required if "the factors upon which the probative value/prejudice evaluation [was] made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling") (citations and quotation marks omitted); United States v. Manner , 887 F.2d 317, 322 (D.C. Cir. 1989) (express finding not required "if the considerations germane to balancing probative value versus prejudicial effect are readily apparent from the record") (citation omitted); United States v. Porter , 881 F.2d 878, 885-886 (10th Cir. 1989) (express finding not required "if the purpose for admitting the other acts testimony is apparent from the record, and the district court's decision to admit was correct") (citation and quotation marks omitted); United States v. Tuchow , 768 F.2d 855, 863 n.8 (7th Cir. 1985) (express finding not required if "the correct reasons for the ruling are apparent on the record") (citations and quotation marks omitted).

The conduct underlying Williams's prior conviction occurred in 1996, and the acts with which he was charged in the present case began in 2008. However, Williams was incarcerated for much of this period. The acts charged began within five years of Williams's release from prison. This is adequate to give the prior conviction probative value. See Prince , 534 S.W.3d at 820 (approving the use of evidence of a crime that occurred nine years before the charged crime).

The stipulation, in its entirety, reads:
On November 25, 1996, in the Circuit Court of Cass County Missouri, in Case Number 17R039601344FX, the defendant Travis W. Williams pled guilty to the offense of statutory sodomy in the first degree, for committing an act of deviate sexual intercourse on August 15, 1996, against J.C., a female who was twelve years old at the time of the offense.
Said act of deviate sexual intercourse involved the defendant inserting his thumb into J.C.'s vagina.
At the time of the commission of the offense in 1996, Defendant Travis W. Williams was 26 years old.

By contrast, the defense was far keener to emphasize Williams's criminal past, mainly for the purpose of insinuating Victim's family had taken a dim view of Williams and had either misled Victim to believe she was being abused or had simply misinterpreted his conduct around her. The defense induced at least six witnesses who had not discussed Williams's prior criminal act on direct examination to discuss the matter on cross-examination. Even then, these witnesses spent only a minute or two on the matter and their testimony on the subject was only a small part of their total testimony.