

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106772 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable David L. Dowd |
| JOE H. BANKS, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 10, 2019 |

### Introduction

Joe H. Banks ("Banks") appeals from the judgment of the trial court, entered after a jury convicted him of first-degree child molestation and first-degree statutory sodomy. On appeal, Banks challenges the trial court's admission of a witness's testimony regarding prior incidents of uncharged child molestation alleged to have occurred decades before the charged crime. Because the witness's propensity-evidence testimony was admissible under the Missouri Constitution article I, section 18(c), and the potential danger of unfair prejudice does not substantially outweigh the evidence's probative value, we find that the trial court did not abuse its discretion in admitting the evidence. Accordingly, we affirm the judgment of the trial court.

### Factual and Procedural History

In September of 2016, Banks's daughter ("Mother") and her husband ("Father") lived with Banks and his wife ("Wife"). One day, while Mother and Father's daughter ("Child") was

visiting Father's mother ("Grandmother"), Child climbed into Grandmother's bed to watch television. Child, who was five at the time, spontaneously told Grandmother "I can't tell." After further prompting, Child communicated to Grandmother that while she was bathing at Banks's house, she told Banks that she could bathe herself, but he said he forgot and began playing with her "tutu"—the term Child used to refer to her vagina. Child mentioned that she did not want to tell because she did not wish for Father and Banks to fight. While Child talked about the incident, she looked "kind of sad, and she had little tears in her eyes[.]" Grandmother knew that Child was able to bathe herself. Grandmother also recognized that Child required medicine for Child's eczema, but Child never needed treatment on her vagina.

Grandmother informed Father and Mother of Child's accusation. Mother then reported the incident to the police. Following further investigation, the State charged Banks with two counts of first-degree child molestation for two separate instances involving Child, one count of first-degree statutory sodomy for forcing Child to rub his penis, one count of third-degree domestic assault, and one count of incest. The State subsequently dropped the third-degree domestic assault and incest charges. The case proceeded to a jury trial.

During pre-trial proceedings, the trial court conducted a hearing to review the State's motion to produce evidence of prior criminal acts. Both parties briefed the issue. Based on the parties' briefs and arguments at the hearing, the trial court determined that Mother's proposed testimony considering Banks's prior alleged criminal acts of sexually abusing Mother was relevant, because that evidenced corroborated Child's testimony and demonstrated Banks's propensity to commit the charged crimes. Additionally, the trial court found that the risk of prejudice that a jury could convict Banks based on the propensity evidence alone did not substantially outweigh the probative value of corroborating Child's testimony.

2

At trial, Child testified that one day while in Banks's bedroom, as Child laid on the bed, Banks stood over her. Wife was not present at the time. With his pants down, Banks "sticked [sic] his private[s] in [Child's] face." Additionally, Banks touched the bare skin of Child's private area with his hand. Banks told Child if she told anyone, she would "get a whipping."

Mother testified at trial. Mother was emotionally distraught throughout her testimony. Mother mentioned that she had specific instructions for caring for Child—Child must not be left alone and only she or Wife could bathe Child:

> Q: We talked a couple times about the special conditions you had, the guidelines you have for people relative to [Child], right?
> A: Yeah.
> Q: So only you and your mom could bathe her, right?
> A: Yes, sir.
> Q: You only wanted your mom to be there when she babysat, right?
> A: Yes, sir.
> Q: And only you and your mom can put the medicine on [Child], right?
> A: Yes.
> Q: It seems like, fair to say, you didn't want any men doing those things, right?
> A: Yes.
> Q: And why did you have those conditions for your daughter?
> A: Because I went through something, and I didn't want her to experience nothing [sic] I went through.
> Q: Tell me about that.
> A: I went through what my daughter went through when I was younger.
> . . .
> Q: How old were you at the time you went through what your daughter went through?
> A: About seven, eight.
> Q: How long did it last?
> A: A while.
> Q: Who was the person that did those things to you?
> A: (Weeps) My dad.
> Q: Is that Joe, Joe Banks?
> A: Yes.
> Q: When you said that he would do something, what specifically did you go through? What did the Defendant do to you?
> A: (Continues crying.) The last thing I got touched on.
> Q: When you say "got touched on" what part of your body did you get touched?
> A: My vaginal area.

3

Q: What would the Defendant, what would your dad use to touch your vaginal area?
A: Breeze.
Q: What part of his body would he use to touch your vaginal area?
A: His hands.

Mother further stated that Banks molested her while no one else was present, in her bedroom. Mother reported the molestation to the police, but later recanted her allegation "because [she] didn't want to see [Banks] go to jail[.]"

Banks testified in his own defense. Throughout trial, Banks presented several theories of his innocence: first, Father did it. Second, Child was mistaken, Banks could not have ever been alone with her, and the events could not have occurred as Child said. Banks denied bathing Child, touching her inappropriately, putting eczema cream on Child, exposing his penis to Child, and refuted sexually abusing Mother. Further, Banks denied being told of Mother's special arrangements for watching Child.

Prior to closing argument, the trial court read the jury various instructions, including:

The defendant is on trial only for the offenses charged. You may not find the defendant guilty only because you believe he may have committed another criminal offense in the past. If you find and believe from the evidence that the defendant previously committed the offense of sexual assaulting [Mother], you may consider that evidence for the purpose of corroborating [Child's] testimony and demonstrating the defendant's propensity to commit the offense for which he is charged.

During the State's closing argument, the State argued the following:

Now, another thing that I wanted to point out is let's not forget that this happened before. You heard [Mother] she came in here and testified she testified that her own father molested her as a child, and it happened in the home. You saw how she was on the stand. [L]adies and gentlemen, there is an instruction called the propensity instruction. You can consider the previous act of [Mother] for two things. You can use it to corroborate [Child's] account, right. Corroborate that this happened to her. The Defendant was a blood relative to her. This occurred in the home. So you can consider that as corroborating testimony to [Child]. You can also consider the propensity of the Defendant to commit acts like this. The propensity to commit acts against children.

4

The trial court submitted the case to the jury for deliberations. The jury found Banks guilty of first-degree child molestation for rubbing Child's vagina with his hand, guilty of first-degree statutory sodomy, and not guilty of first-degree child molestation for placing his penis on Child's vagina. Banks subsequently moved for a new trial, which the trial court denied. Banks now appeals.

## Standard of Review

The trial court possesses wide discretion concerning the admissibility of evidence. State v. Prince, 534 S.W.3d 813, 818 (Mo. banc 2017) (internal citation omitted). We review the trial court's admission of evidence under the Missouri Constitution article I, section 18(c) for an abuse of that discretion. State v. Williams, 548 S.W.3d 275, 287 (Mo. banc 2018) (citing Prince, 534 S.W.3d at 818). We will not disturb the trial court's evidentiary ruling "unless it is clearly against the logic of the circumstances." Id. (citing Prince, 534 S.W.3d at 818). "On direct appeal, 'this Court reviews the [trial] court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" Prince, 534 S.W.3d at 818 (quoting State v. Forrest, 183 S.W.3d 218, 223–24 (Mo. banc 2006)).

## Point on Appeal

In his sole point on appeal, Banks alleges that the trial court erred in admitting Mother's testimony over his objection regarding her alleged prior abuse as a child because this evidence was improper propensity evidence of dismissed, recanted charges and was more prejudicial than probative.

## Discussion

The Missouri Constitution article I, section 18(c) states that:

> in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or

5

demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Mo. Const. art. I, sec. 18(c). Generally, our jurisprudence history has engrained a "prohibition against the use of propensity evidence in criminal cases[.]" Williams, 548 S.W.3d at 281. However, "[t]he practice of admitting evidence of the defendant's prior sexual misconduct for purposes of proving the defendant's propensity to commit the sex offense with which he was charged has long been a feature of American law." Id. at 282 (internal citations omitted). As such, the introduction of evidence of a defendant's past sexual misconduct to show the defendant's propensity to commit the charged sex offense has been "a well-recognized exception to the general ban on propensity evidence." Id. Further, when the charged offense involves a sexual offense against a minor or a prior act of child molestation, we commonly permit evidence of the defendant's prior sexual misconduct and prior child molestation. Id. at 283–84; see also Fed. R. Evid. 414(a).

When deciding to admit propensity evidence to show the defendant's prior sexual misconduct or prior acts of child molestation, the trial court "is not required to make an express finding of legal relevance before admitting evidence under article I, section 18(c) provided the record reflects a sound basis for the balancing the amendment requires." Williams, 548 S.W.3d at 286 (internal citations omitted). "Even though the [trial] court is not required to make this finding in so many words, it nevertheless is essential that the evidence meet the balancing test for legal relevance set forth in the second sentence of [article I, section 18(c)]." Id. at 288. Here, the trial court made an explicit finding during the pre-trial motions that Mother's testimony regarding Banks molesting her as a child was legally relevant because "the probative value of corroborating [Child's] testimony substantially outweighs the risk of prejudice that a jury could

convict [Banks] based off the propensity evidence alone." We echo that statement now in finding that the trial court did not abuse its discretion in admitting this evidence as discussed in our reasoning below. See Williams, 548 S.W.3d at 286, 287–88.

Here, the State used Mother's testimony both to corroborate Child's testimony and to demonstrate Banks's propensity to commit the charged crime of child molestation. See Mo. Const. art. I, sec. 18(c). The trial court found this evidence relevant and admissible.

"Admissibility requires relevance. The general rule in Missouri is that relevance is two-tier[ed]: logical and legal." State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002) (internal citations omitted). "Determining whether evidence is logically relevant is a very low-level test that is easily met." Prince, 534 S.W.3d at 819 (internal quotation omitted). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." Anderson, 76 S.W.3d at 276 (internal citation). Here, Mother's testimony that Banks molested her as a child was logically relevant because it tended to make the later molestation of Banks's granddaughter in a similar fashion more probable. See id. Specifically, Mother's testimony proposed a modus operandi for Banks: he tended to molest children of his own blood in his home.

Next, we evaluate the legal relevance of Mother's testimony. "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." Id. (internal citation omitted). "Before propensity evidence can be said to have any probative value, it must be sufficient for the jury to conclude the defendant actually committed the prior criminal act." Williams, 548 S.W.3d at 288 (internal citations omitted). Here, Mother's testimony was not contradicted by any other testimony besides Banks's general denial, nor was her validity

7

challenged aside from being asked her reasoning for withdrawing the accusation—which Mother explained as a choice not to send her father to jail rather than as an indication that the incidents did not occur. See State v. Peters, 186 S.W.3d 774, 778 (Mo. App. W.D. 2006) (internal quotation omitted) ("Generally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated."). Mother offered sufficient evidence for the jury to determine that Banks previously molested her when she was a child in a similar manner to how Child accused Banks of molesting her. See id.; see also Williams, 548 S.W.3d at 288.

The State had an appreciable need to introduce evidence of Banks's prior uncharged crime. At trial, Child was young and was the only eyewitness. The other witnesses indirectly corroborated Child's testimony by elaborating on her story through information she previously told them. In response, Banks argued that Child was mistaken, was an unreliable witness, and perhaps Child confused Banks with Father—the actual perpetrator. The unique circumstances of this type of case, as well as Banks's attack upon the credibility of the State's witnesses, including Child, enhanced the probative value of Mother's propensity-evidence testimony. See Williams, 548 S.W.3d at 289.

Further, Mother's testimony directly corroborated Child's testimony. Child was very distracted throughout her forensic interview, as is normal for a five-year-old child. Additionally, because of her young age, Child was not especially coherent or consistent during trial—Child often could not recount specific details and frequently responded with "I don't know" or "I don't remember." Mother's testimony helped dispel the possibility that Child made a mistake or that Banks had no propensity to commit the charged crime. See Williams, 548 S.W.3d at 289 (finding that to show evidence is probative, the evidence "must tend to show the defendant

8

actually had a propensity to commit the charged crime at the time it is alleged to have occurred."). Mother's testimony had significant probative value at trial.

"Probative value, however, is only one side of the scale. The other side is the risk of unfair prejudice." Id. at 890. Some of the factors bearing on the prejudicial effect of propensity evidence are:

> [1] whether the jury knows or can fairly infer the defendant was punished for his past criminal acts. . . . [2] the manner in which the [S]tate proves the prior criminal act at trial. . . . [3] whether the evidence of the defendant's prior criminal act eclipses—or is overshadowed by—the evidence of the charged crime. . . . [and] [4] the manner in which the [S]tate uses the evidence at trial.

Id. at 290–91 (internal citations omitted).

Just as the State demonstrated an appreciable need to introduce evidence of Banks's prior uncharged crime, that need simultaneously exposes the appreciable dangers of allowing such testimony when direct evidence of the charged crime is weak. The record amply shows the challenges of Child's testimony given her age and inconsistent statements, and the weakness Child's testimony presented for the prosecution of the charged crimes. One might surmise that Child's testimony, alone, would not have resulted in Banks's conviction. Such is the danger presented by allowing the admission into evidence of uncharged prior bad acts under article I, section 18(c). But that policy decision was made by the voters in Missouri when article I, section 18(c) was passed, and that is the law we apply. Nevertheless, just as the weakness of Child's testimony intensified the State's need and desire for Mother's prior bad conduct evidence concerning Banks, the weakness of Child's testimony correspondingly heightened the potential prejudice of such evidence and impacts the balance between probative value and undue prejudice.

We first note that allowing the State to prove the defendant's prior uncharged crime by calling his former victim, who speaks of the prior crime firsthand, increases the danger of unfair

9

prejudice. Williams, 548 S.W.3d at 290. Although Mother was crying during her testimony and was the former victim speaking firsthand of Banks molesting her when she was a child living in his home, we are not persuaded that her personal testimony unfairly tilted the balance when weighing probative value against the prejudicial effect of Mother's testimony. See id. at 288 (reasoning that this balancing act is "intensely case-specific."). Understandably, it is not reasonable to expect a witness to give emotionless testimony about such personal and traumatizing experiences. Moreover, Mother's emotive persona during her testimony was consistent with the incident about which she was testifying. The record does not suggest Mother engaged in theatrical drama or exaggerated sobbing. Rather, Mother's emotional testimony offered the jury an opportunity to gauge Mother's credibility as a witness. See State v. Gill, 167 S.W.3d 184, 196 (Mo. banc 2005) (internal citations omitted); Wilkins v. Bd. of Regents of Harris-Stowe Univ., 519 S.W.3d 526, 539 (Mo. App. E.D. 2017) (noting that the jury is in a superior position to observe the witness and gauge his or her credibility and is free to believe or disbelieve the witness's testimony).

The record shows that Mother's testimony regarding her firsthand experience as a previous victim of Banks's child molestation was only as elaborate as was necessary to describe the incident and illustrate the similarities between Mother's account and Child's accusations. Further, the trial court instructed the jury to limit its consideration of Mother's testimony as merely corroborating evidence for Child's testimony and propensity evidence. We presume that the jury followed the trial court's instructions. State v. McFadden, 391 S.W.3d 408, 424 (Mo. banc 2013). Thus, the propensity evidence was both logically and legally relevant. See Prince, 534 S.W.3d at 819. We recognize the legitimate concern that a jury might focus more on Mother's testimony than the limited and sometimes inconsistent testimony of Child, and we are

cautious to consider that possibility in our balancing analysis. But Mother's testimony potentially aided the jury in various respects. For example, the similarity in the alleged prior bad conduct offered an explanation for Mother's strict rules in the home with regard to bathing Child and challenges Banks's credibility in denying knowledge of said rules. Of course, the similarity of the alleged prior uncharged crime could be expected to raise the passions of a juror against Banks. Having carefully reviewed the evidence and legal record, we do not find that any prejudice resulting to Banks from Mother's propensity-evidence testimony substantially outweighed the probative value of such testimony. See Williams, 548 S.W.3d at 288.

Accordingly, the trial court did not abuse its discretion in admitting Mother's testimony regarding her allegations of Banks previously molesting her as a child. Id. at 287. Banks's point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.

11