

# In the
## Missouri Court of Appeals
### Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86235 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | SEPTEMBER 17, 2024 |
| KURT M. BUMBY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable J. Hasbrouck Jacobs, Judge

Before Division Four:  Anthony Rex Gabbert, Chief Judge, Presiding, Gary D. Witt, Judge and Janet Sutton, Judge

Kurt Bumby ("Bumby") appeals a judgment of the Circuit Court of Boone County, Missouri ("trial court"), convicting him, after a jury trial, of one count of statutory sodomy in the second degree, section 566.064.[1]  Bumby was sentenced to seven years' imprisonment.  Bumby raises two points on appeal:  (1) the trial court erred in overruling Bumby's motions for judgment of acquittal because the State failed to elicit sufficient evidence to support Bumby's conviction for Count II; and (2) the trial court erred when it allowed the use of propensity evidence.  Finding no error, we affirm.

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as updated by supplement through 2020, unless otherwise noted.

**Factual and Procedural Background**

On September 11, 2020, Bumby was charged with two counts of statutory sodomy in the second degree, under section 566.064, for having deviate sexual intercourse with a minor, "S.W."[2] As to Count I, Bumby was charged with having deviate sexual intercourse with minor S.W. on or between March 1, 2010, and March 15, 2011. For Count II, Bumby was charged with having deviate sexual intercourse with minor S.W. on or between March 16, 2011, and March 14, 2012.

Before trial, the State notified the trial court and Bumby that it intended to introduce propensity evidence in the form of testimony from another victim of Bumby, G.G., as well as testimony from Bumby's ex-wife ("Ex-wife"). Prior to trial, Bumby filed a motion *in limine* and, after that motion was denied, filed a motion for reconsideration. At trial, Bumby unsuccessfully objected to the use of propensity witness testimony multiple times. Bumby was granted a continuing objection to the admission of all propensity evidence. The jury was not informed as to whether Bumby had been or was being prosecuted for the sexual assault of G.G. The jury trial was held on February 28, 2023. Viewed in the light most favorable to the verdict, the evidence presented at trial was as follows:

S.W., a minor, met Bumby through Bumby's daughters when S.W. was about twelve years old. Both S.W. and one of Bumby's daughters ran track together on their middle school's team. During S.W.'s freshman year of high school, S.W. would, on

---

[2] Pursuant to sections 595.226 and 509.520, RSMo (2023), we have refrained from using the victim's or any witnesses' name other than the parties.

occasion, accompany Bumby's daughters to their house after track practice. In 2011, when S.W. was fifteen, he would visit Bumby's household frequently to spend time with the Bumby family.

S.W. and Bumby became closer during this period. Bumby would take it upon himself to bring S.W. along to family outings. Bumby would also purchase name brand clothes, sports tickets, and other gifts for S.W. S.W. would also sometimes spend the night at the Bumby household. Bumby would even invite S.W. to go on family vacations, including a trip to Hawaii in 2011 and Mexico in 2012. Bumby became an important older male figure to S.W. that S.W. was lacking due to his father's absence.

At trial, S.W. testified that Bumby began sexually assaulting him sometime after April 2011. The exact date of when the sexual abuse began was not presented. S.W. further testified he could not recall how often the abuse would occur, but believed it was about once a month from 2011 to 2013. To help aid the jury's understanding of the timeline of abuse, a chart spanning several years was used in which S.W. was asked to mark with an "X" any year he was abused by Bumby. S.W. marked the years 2011, 2012, and 2013, when he was fifteen, sixteen, and seventeen years of age, respectively.

When S.W. would spend the night at the Bumby household, Bumby would, on occasion, climb into bed with S.W. after S.W. had gone to sleep. Bumby would lie behind S.W. and would touch "[S.W.] on [his] genitals. Sometimes with his hand, sometimes with his mouth." During each occurrence, Bumby would attempt to cause S.W. to ejaculate. S.W. could not recall how Bumby would put his mouth to S.W.'s genitals, but that he would do so until S.W. would ejaculate. S.W. never confronted

3

Bumby during or after one of these occurrences, as S.W. wanted to pretend like the abuse had never happened. The abuse occurred an average of one time per month in 2011 and 2012.

Ex-wife testified at trial that she knew of S.W., as S.W. would frequently spend time with Ex-wife and Bumby's daughters. Ex-wife became concerned with the frequency in which Bumby would interact with S.W. Those concerns escalated when she found out Bumby took S.W. with the family to Hawaii in 2011. She subsequently decided to write an anonymous letter to S.W.'s mother ("Mother") on May 8, 2012. In the letter, Ex-wife outlined her concerns and recommended that Mother intervene. After Mother received the letter, she obtained S.W.'s cell phone records and discovered that Bumby and S.W. had exchanged over 2,700 messages. She then approached Bumby and told him to stay away from S.W. Thereafter, Mother went to local police to report Bumby's behavior.

In March of 2012, investigators approached S.W. Initially, S.W. did not wish to comply with the police's investigation and denied any sexual contact with Bumby. S.W. testified at trial that he was afraid of the repercussions if he reported what Bumby had done to him. Specifically, S.W. was worried about losing the connection he had with the Bumby family.

In 2019, police again approached S.W. and told him that another victim, G.G., had come forward against Bumby. After learning of this, S.W. agreed to help investigators. S.W. made the decision to tell the police the truth so that there would be no future victims of Bumby.

4

G.G. is Bumby's half-brother and first met Bumby in 1989 when G.G. was ten or eleven years old. G.G. testified that during the first half of 1990, Bumby began sexually assaulting him. To aid jurors, the State admitted into evidence a year-by-year chart. G.G. was asked to mark each year he had been sexually abused by Bumby with an "X." G.G. ultimately marked the years 1990 through 1992 with an "X," and 1993 and 1994 with a question mark as he was unsure if any abuse occurred. G.G. testified that Bumby would lie in bed behind G.G. and touch G.G.'s genitals with his hand. This went on until 1994, when G.G. moved into his family's new home and stopped spending as much time around Bumby. G.G. testified that he was hesitant to report the abuse, as he viewed Bumby as an older male role model who was present when G.G.'s own father was not. At all points during the period when Bumby was sexually assaulting G.G., Bumby was over the age of eighteen.

In 2019, G.G. called Ex-wife and told her that he had been sexually assaulted by Bumby decades earlier. Ex-wife knew G.G. and interacted with G.G. prior to her divorce from Bumby. During their phone call, Ex-wife told G.G. that she was a mandatory reporter of sexual assault due to her job as a healthcare worker and that if G.G. did not report the accusations to the police, Ex-wife would be required to do so. Thereafter, G.G. reported the abuse to law enforcement.

Bumby made an oral motion for judgment of acquittal at the close of the State's evidence to both Counts I and II. The trial court granted Bumby's motion on Count I but denied his motion on Count II. Bumby subsequently made a motion for judgment of acquittal as to Count II at the close of all of the evidence, but this motion was also denied.

5

The jury found Bumby guilty as to Count II. Following the jury's recommendation, the trial court sentenced Bumby to seven years' imprisonment and imposed a fine in the amount of $5,000. This appeal follows.

Bumby raises two points on appeal. Point I challenges the sufficiency of the evidence. Point II alleges error in the admission of uncharged bad acts regarding G.G.

**Sufficiency of the Evidence**

### Standard of Review

When there is a challenge to the sufficiency of the evidence the appellate court's review is limited to determining whether the evidence presented was sufficient for a rational fact-finder to have found every essential element of the crime charged beyond a reasonable doubt. *See State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011). In conducting this review, the Court views the evidence and all reasonable inferences from the evidence in the light most favorable to the verdict reached by the jury, and "disregard[s] any evidence and inferences contrary to the verdict." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). This determination is "not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt" but instead a question of whether a rational fact-finder could have found the elements of the crime being charged beyond a reasonable doubt, after taking the evidence in the light most favorable to the State. *Nash*, 339 S.W.3d at 509.

**Analysis**

Bumby argues that the trial court erred in overruling his motion for acquittal because the State failed to elicit sufficient testimony for the jury to find beyond reasonable doubt that Bumby committed the charged sexual conduct during the period alleged. Bumby argues that the State failed to provide an exact date for when the sexual abuse occurred and failed to provide an exact enough description of the sexual abuse Bumby was alleged to have committed. We disagree.

Bumby argues that there was insufficient evidence that Bumby committed "any act of hand to genital contact" during the relevant period, between March 16, 2011, and March 14, 2012. This argument is inconsistent with S.W.'s testimony at trial. S.W. testified that Bumby would use his hand to touch S.W.'s penis. S.W. stated that "[Bumby] touched me on my genitals. Sometimes with [Bumby's] hand . . . ." S.W. further testified that Bumby would touch him on the genitals with his hand and rub his penis "trying to ejaculate me." He testified this happened on average of one time per month during this period. Bumby also argues that an exact date of sexual abuse was not presented by the State, but the lack of an exact offense date is not fatal to sexual abuse cases. *See State v. Miller*, 372 S.W.3d 455, 464 (Mo. banc 2012) ("Time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse."). It can be extremely difficult for victims to specify exact dates in which sexual abuse occurred when the abuse is frequent and ongoing. This difficulty is multiplied when the abuse occurred years in the past, such as the case here. S.W. did not come forward until 2019, eight years after the abuse began. The State's indictment

7

specified a period of abuse beginning around March of 2011, when S.W. was fifteen years old, and ending a year later, around March of 2012, when he was sixteen years old. Furthermore, the testimony of one witness is enough to secure a conviction if the fact finder deems them credible and believable. *See State v. Bell*, 936 S.W.2d 204, 207 (Mo. App. W.D. 1996) ("The testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent."). Here, the jury was in the best position to determine if S.W.'s testimony was credible and believable. *Id.* The jury determined that S.W.'s testimony was trustworthy and persuasive, which resulted in the conviction of Bumby.

We find the trial court did not err in overruling Bumby's motion for judgment of acquittal because there was sufficient evidence to support the conviction on Count II. The jury determined that the evidence presented by the State was credible and believable, including the testimony of S.W. *See Nash*, 339 S.W.3d at 509. Point I is therefore denied.

**Propensity Evidence**

**Standard of Review**

Bumby's claim of evidentiary error is reviewed for an abuse of discretion. *See State v. Hollowell* 643 S.W.3d 329, 340 (Mo. banc 2022) ("[A]ppellate courts extend great deference to trial courts' supervision of trials and review circuit court rulings on evidentiary matters for an abuse of discretion."). A circuit court's evidentiary ruling will not be altered by a higher court unless it is "clearly against the logic of the circumstances." *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017). "[I]f reasonable

8

persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018) (quoting *Anglim v. Mo. Pac. R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992)).

## Analysis

**Probative Value**

In point two, Bumby argues that the trial court erred in its admission of propensity evidence by way of testimony from G.G., Ex-Wife, and the State's Exhibits 1 through 4. Bumby alleges that, taken as a whole, this evidence was more prejudicial than probative and should have been excluded.

For evidence to be admissible, it must be both logically and legally relevant. *See Prince*, 534 S.W.3d at 817. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (internal quotation omitted). Admission of evidence to show a criminal defendant's propensity to commit a specific offense has long been disfavored by our courts; however, an exception is made for past acts in criminal prosecutions of sex offenses involving minors. *See Williams*, 548 S.W.3d at 281-86. Article I, § 18(c) of the Missouri Constitution authorizes the admission of such evidence in "prosecutions for crimes of a sexual nature involving a victim under eighteen years of age[.]" "The determination of how much and what kind of probative value particular propensity evidence may have, the nature and extent of the danger of unfair prejudice presented by that evidence, and whether the former is substantially outweighed by the latter, are intensely case-specific questions." *Williams,*

9

548 S.W.3d at 288. Determining what relevant factors are to be considered, and how much weight to afford each factor, will vary on a case-by-case basis. *Id.* "The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." MO. CONST. art. I, § 18(c). For evidence to be probative, it must tend to show that the defendant "actually had a propensity to commit the charged crime at the time it is alleged to have occurred." *Williams* 548 S.W.3d at 289.

Here, G.G. testified that Bumby began sexually assaulting him in 1990 when G.G. was eleven years old by touching G.G.'s genitals with his hand. Bumby continued to sexually abuse G.G. up until 1994. Bumby cross-examined G.G.'s recollection of events. During this cross-examination, G.G.'s testimony regarding the timeline of abuse was questioned, as significant time had passed between the sexual abuse and the trial. Ex-wife's testimony aligned with G.G.'s testimony, as she echoed G.G.'s claims that he had reached out to her regarding Bumby's prior abuse. Based on G.G.'s and Ex-wife's testimony, it was reasonable for the jury to conclude that the prior uncharged acts had in fact occurred. The testimony of a single witness, if believed by the finder of fact, is enough to establish a fact. *See State v. Murphy*, 358 S.W.3d 126, 131 (Mo. App. S.D. 2011).

Bumby also argues that due to the large temporal gap between the uncharged acts against G.G. and the charged acts against S.W., the propensity evidence was not probative. "[A]n inference of propensity might be proper notwithstanding a significant time lapse between the prior crime and the charged crime if the two crimes are highly

10

similar." *Williams*, 548 S.W.3d at 289. Even when the uncharged acts occurred over twenty years before the charged acts, our courts have found that propensity evidence was admissible under article I, section 18(c) due to the similarity between the acts. *See State v. Robinson*, 662 S.W.3d 120, 126 (Mo. App. S.D. 2023) (holding propensity evidence admissible despite twenty-one-year gap between the prior acts and the charged acts); *see also State v. Brown*, 596 S.W.3d 193, 208-09 (Mo. App. W.D. 2020) (holding propensity evidence admissible despite seventeen and twenty-one year gaps between prior acts and charged acts).

Although there was a twenty-year time lapse between the abuse of G.G., which occurred in the early 1990s, and the abuse of S.W., which began in 2011, both charged and uncharged acts are sufficiently similar. G.G. and S.W. were around the same age when the abuse began, being between twelve and sixteen years old. Both boys viewed Bumby as an older male role model. For G.G., Bumby stepped in to the role of an older brother, even though they were only half-brothers and G.G. had only met Bumby when he was nine or ten years old.[3] For S.W., Bumby stepped in to the role of a caring father, as S.W.'s father had been separated from his mother for several years and rarely saw S.W. In these authoritative roles, Bumby would provide the victims with emotional support, gifts, or both. The abuse of both victims usually occurred at a family home. Often, this would be wherever Bumby was living at the time with his other family members.

---

[3] G.G.'s mother had placed Bumby up for adoption after giving birth while in college. Bumby contacted her after he was an adult and G.G. met him for the first time after that contact was made.

11

The manners in which the sexual acts occurred are also highly similar. G.G. testified that Bumby would get into bed with him, lie behind G.G. at night, and wait for him to fall asleep. Bumby would then reach around him and begin touching his genitals and ultimately masturbating G.G. with his hand. S.W. testified that Bumby would wait for S.W. to fall asleep before getting in bed behind him. Bumby would then reach around him and touch S.W.'s genitals with his hand and masturbate him to ejaculation. Both victims painted an almost identical picture of the abuse that they suffered at the hands of Bumby. Due to how similar the sexual acts are, the use of the propensity evidence by way of G.G.'s testimony was highly probative.

In determining the probative value of propensity evidence, the courts can also consider the State's need for such evidence. *See State v. Shepard*, 662 S.W.3d 761, 770 (Mo. App. E.D. 2023) (quoting *Williams*, 548 S.W.3d at 289). "Prior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." *Williams*, 548 S.W.3d at 289 (quoting *United States v. LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001)) (emphasis original).

The State's case against Bumby needed G.G.'s testimony. There was no physical evidence, so the State's case rested solely on S.W.'s testimony. G.G.'s testimony helped answer why S.W. decided to come forward in 2019 rather than when the abuse was ongoing. When S.W. was initially approached by police in 2012, he denied ever being abused by Bumby. S.W. did not disclose the abuse to police until 2019, when he was notified that another victim, G.G., had also contacted law enforcement. By using G.G.'s testimony, the State was able to present the whole picture to the jury as to why S.W.

12

decided to now come forward after this much passage of time. As the propensity

evidence was not only useful, but likely necessary to the State's argument, its inclusion is

not overly prejudicial based on this factor.

**Prejudice**

The probative value of the evidence must be balanced with the risk of unfair

prejudice against the defendant. *See Williams*, 548 S.W.3d at 290. There are several

factors that determine the prejudicial effect of the propensity evidence including:

whether a jury knows of or can reasonably assume that the defendant was punished for

their past bad acts; how the State proves the prior bad act during trial; whether the

charged crime is made secondary by extensive evidence of the prior bad act; and how the

State uses the evidence of a prior bad act during trial. *See State v. Coyle*, 671 S.W.3d

702, 722 (Mo. App. W.D. 2023).

Bumby argues that the live testimony of G.G. increased the risk of unfair

prejudice. When live testimony is presented regarding prior uncharged acts, the risk of

unfair prejudice may be heightened. *See id.* at 723. However, propensity evidence in the

form of live testimony does not automatically rise to the level of unfairly prejudicial. *Id.*

Here, the record does not reflect the emotional aspects of a victim's testimony. However,

over twenty years had passed since the sexual abuse occurred, and G.G. at the time of

trial was over forty years old. G.G.'s responses to the State's and Bumby's questions did

not emphasize the traumatic nature of the uncharged acts but were instead straight to the

point and were not graphic. Furthermore, the trial court judge was in the best position to

decide whether the testimony of G.G. reached a level of unfair prejudice, which

13

ultimately decided did not reach such a level. *See State v. Billings*, WD 85545, WD 85898, 2024 WL 2713283, at *8 (Mo. App. W.D. May 28, 2024).

There is generally a risk that when propensity evidence is used to introduce prior bad acts, a jury will be prejudiced against the defendant. "If the jury is allowed to infer (or, worse, speculate) the defendant escaped punishment in the past, it may be inclined to convict merely to punish the defendant for past criminal acts rather than for the crime charged." *Williams*, 548 S.W.3d at 290. When a trial court gives explicit instructions to the jury that the defendant is only on trial for the crime charged and not for past conduct, the risk that the jury will convict for the past conduct is lessened. *See Shepard*, 662 S.W.3d at 771; *see also State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) ("A jury is presumed to follow the circuit court's instructions.").

Here, the jury was told that S.W. ultimately decided to aid the investigation into Bumby because G.G. came forward first. Furthermore, in Instruction No. 5 the trial court made it clear that Bumby was only on trial for the charged acts. The Instruction read that "[t]he defendant is on trial only for the offense charged"'" and the jury "may not find the defendant guilty only because [it] believe[s] he may have been involved in or committed other offenses or bad acts in the past[.]" The State echoed the instruction in its closing, and made sure to emphasize Instruction No. 5 and that Bumby was only on trial for his actions against S.W. The risk that the jury would be tempted to convict Bumby because he may have, in their minds, escaped punishment for the sexual acts against G.G. was low.

14

Bumby argues that because the propensity evidence consisted of a prior uncharged act that was particularly egregious, the prejudicial value of introducing such evidence outweighed its probative value. "Another factor that bears on the danger of unfair prejudice from propensity evidence is whether the evidence of the defendant's prior criminal act eclipses—or is overshadowed by—the evidence of the charged crime." *Williams*, 548 S.W.3d at 290. While the use of propensity evidence that a defendant had previously engaged in deviate sexual acts with a minor is highly prejudicial when used "in a prosecution for a less heinous crime[,]" there is a much-reduced chance of unfair prejudice when the newly charged crime is similarly heinous to the previous acts. *Id.*

As mentioned previously, the charged and the uncharged acts are almost identical. This is not a situation where a prior heinous crime is overshadowing a currently charged act. *Cf. Williams*, 548 S.W.3d at 290-91 (evidence of defendant's past criminal sexual acts against minors was made known to jury and was not deemed unfairly prejudicial as new charges were also criminal sexual acts against minors). Furthermore, the evidence of S.W.'s relationship with Bumby and the testimony of S.W. were emphasized more by the State than G.G.'s prior interactions with Bumby. S.W.'s testimony about the charges Bumby was facing was the primary focus of the State at trial, and S.W.'s testimony was discussed more than any single piece of propensity evidence. Bumby's argument concerning the amount of time spent on the testimony of G.G. or other propensity witnesses falls flat, as G.G.'s and others' testimony was clearly secondary to that of S.W.'s.

Another factor in determining whether the prejudicial effect of propensity evidence outweighs its probative value is the manner in which the State utilizes the evidence. *See Williams*, 548 S.W.3d at 291. When the prior conduct is emphasized for more time than is otherwise necessary, or the State entices the jury to convict the defendant based on negative character traits rather than because the defendant likely committed the charged offense, the danger of unfair prejudice is significantly heightened. *Id.* However, if the State "spends relatively little time on the issue of a defendant's prior crimes and merely uses the evidence for its proper purpose (namely, to suggest the defendant has a propensity to commit the charged crime), the danger decreases and may—on balance—not be unfair." *Id.*

During the State's closing argument, the prosecutor said, "These things should leave you firmly convinced that [Bumby] is a master manipulator of everyone around him, of children, of his half-brother when he was a child, of parents of his own children, of their friend." This statement was a comment on Bumby's general character, increasing the prejudicial nature of the propensity evidence. However, the State spent relatively little time on this issue. G.G.'s testimony and Ex-wife's testimony were not used to further this statement by the prosecutor. As discussed previously, G.G.'s and Ex-wife's testimonies were used to aid the jury's understanding of the timeline of events leading up to S.W.'s belated reports to law enforcement. The State also properly used the evidence

16

for the purpose of showing that Bumby had the propensity to commit the charged crime, which agrees with the goals of Article I, § 18(c).[4]

Finally, Bumby claims that the failure of S.W. to provide specific dates for the sexual acts increased the prejudicial value of the propensity evidence. As previously discussed, no exact date of alleged conduct is needed. The Supreme Court is clear on this issue in *Miller*, 372 S.W.3d at 464-65.

We find the trial court did not err in overruling Bumby's motion to exclude propensity evidence as the probative value of Bumby's prior uncharged acts against G.G. was not substantially outweighed by any danger of unfair prejudice. Point II is therefore denied.

### Conclusion

For all of the above-stated reasons, we affirm the judgment of the trial court.

_____
Gary D. Witt, Judge

All concur

---

[4] The State also argues that as Bumby did not object to an improper closing argument, he failed to preserve this issue for appeal. The State is correct that Bumby did not preserve any distinct and specific argument related to this portion of the closing argument. We note, however, that Bumby was granted a continuing objection to the admission of all propensity evidence. Since our analysis looks at how the propensity evidence was used throughout the proceedings, including during openings and closings, the State's argument is ultimately without merit.

17