IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 STATE OF MISSOURI, )
 )
 Respondent, )
 WD83888
 v. )
 )
 OPINION FILED:
 )
 November 9, 2021
 CORY A. DAVISON, )
 )
 Appellant. )

 Appeal from the Circuit Court of Benton County, Missouri
 The Honorable James A. Hackett, Judge

 Before Division One: W. Douglas Thomson, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 Cory Davison appeals, following a jury trial, his convictions of two counts of first-degree

child molestation, § 566.067,1 and one count of incest, § 568.020, for which he was sentenced by

the court to concurrent terms of eighteen years’ imprisonment on each child molestation count,

and a consecutive term of four years’ imprisonment on the incest count, for a total sentence of

twenty-two years’ imprisonment. Davison raises two points on appeal. First, he argues that the

trial court erred in admitting propensity evidence under § 18(c) of the Missouri Constitution.

 1
 All statutory references are to the Revised Statutes of Missouri (Supp. 2017).
Second, he argues that the trial court erred in excluding evidence that the prior victim previously

made allegedly false allegations of sexual assault against other people. Finding no error, we affirm.

 Background

 On May 17, 2013, Davison married M.K., who gave birth to Victim (Davison’s child) on

July 21, 2013. The relationship did not last, however, and M.K. filed for divorce in May of 2017.

Because there were allegations that Davison had physically abused Victim, a guardian ad litem

(GAL) was appointed for Victim as part of the divorce proceedings.2 During the divorce

proceedings, Victim spent time alternating between Davison’s and M.K.’s homes, primarily

between October of 2017 and January of 2018. During that time, Davison lived with his mother

in Bolivar, Missouri, and M.K. lived with her mother in Morrisville, Missouri.

 Shortly after Victim began staying with Davison, she started exhibiting unusual behavior;

specifically, she would grab M.K.’s and M.K.’s mother’s crotches and say, “I got your penis.”

Initially, M.K. did not think much of Victim’s behavior and simply corrected her, noting that it

was inappropriate and Victim should not do that. But when the behavior persisted, M.K. asked

Victim, “Who told you that?” and Victim responded, “My dad.” M.K. then advised the GAL of

Victim’s conduct. Around the same time period, Victim also began refusing to wear dresses

without wearing pants beneath them because “she was afraid somebody was going to see her butt.”

 On January 5, 2018, while the GAL was visiting Victim at M.K.’s home, Victim

spontaneously told the GAL that Davison slept naked and licked Victim’s butt. The GAL asked

Victim what she meant by “butt,” and Victim pointed to her vaginal area. The GAL advised M.K.

that, if Victim made any more similar comments, M.K. needed to contact the child abuse hotline

 2
 The abuse allegations prompting the appointment of the GAL were not sexual in nature. The GAL testified
that her appointment was made in response to a situation where Davison spit on Victim. During a Child Advocacy
Center interview, Victim also indicated that Davison had smacked her across the cheek.

 2
and report Davison. A day or so later, Victim remarked that Davison slept naked with her, and

M.K. contacted the child abuse hotline on January 9, 2018. An investigator for the Children’s

Division went to Davison’s home in response to the call, where she spoke with Davison and

Victim. Victim told the investigator that she wanted to speak in the bedroom, and as the

investigator and Victim headed towards the bedroom, Davison joined them and volunteered to the

investigator that he had been sleeping in the same bed as Victim but had purchased an air mattress

to keep in another room and thought it would be best if he started sleeping in a separate bedroom.

 On January 11, 2018, Victim was interviewed at the Child Advocacy Center. During the

interview, Victim revealed that she shared a bed with Davison, that he slept in only his underwear,

and that he licked her “butt,” a word she used to refer to her vaginal area as well as her bottom.

When provided with anatomically correct dolls to demonstrate what happened between her and

Davison, Victim showed the girl doll with her face on the boy doll’s penis and moved the head up

and down. At another point, when shown anatomically correct drawings of a boy and a girl, Victim

actually licked the penis on the paper depicting a boy when discussing what she meant when she

said she saw Davison’s “butt.” Victim also indicated that Davison had touched her “butt” (which

she clarified referred to her vaginal area) with both his tongue and his hands. A subsequent search

of Davison’s home revealed multiple children’s items mingled with Davison’s items in a single

bedroom, and Davison’s mother verified that Victim and Davison, in fact, shared the bedroom.

 The State charged Davison with two counts of first-degree child molestation (one count for

Davison licking Victim’s vagina and one count for Davison placing his penis in Victim’s mouth)

and one count of incest because Victim was Davison’s descendant by blood. Before trial, the State

filed a motion to offer propensity evidence under § 18(c) of the Missouri Constitution in the form

of testimony from M.O. The motion suggested that M.O. would testify that, “when she was around

 3
four years old, [Davison] took her to a bedroom, exposed his penis and placed his penis inside her

mouth until he ejaculated.” The trial court held a hearing, wherein it received testimony from

M.O. that was consistent with the State’s representation in its motion. After the hearing, the trial

court made the following findings:

 The Court has considered the evidence and arguments of the parties in looking
 at the probative side of this. The Court has looked at whether or not the evidence
 is sufficient for the jury to conclude the defendant committed the prior criminal act.
 The Court acknowledges that it is simply the victim’s testimony as opposed to a
 conviction; however, a victim’s testimony can be sufficient for a jury to believe that
 the [defendant] committed the act.

 Does the evidence tend to show the defendant actually had the propensity to
 commit the crime charged? In that regard, we look at the similarity of the offenses.
 We have similar gender, similar age, similar locations within a home. And the
 Court believes the acts, while not identical, are similar enough.

 The Court looks at the State’s need for the evidence. In this case before the
 Court, as far as the Court is aware, there is no scientific or forensic evidence. And,
 therefore, it is simply the victim’s statements and the statements she made to other
 people. But, primarily, it’s what the victim said and whether or not the victim [sic]
 is going to believe. And in the cases the Court has looked at, that weighs heavily
 in the Court’s decision for the probative side.

 As to the prejudicial side, the Court acknowledges that one of the issues it’s
 going to face is whether the jury can know or infer that the defendant was punished
 for the past act. It’s very obvious here that the defendant, if they believe that he
 committed the past act, was never punished for it. It also looks at the fact that this
 is live testimony, which is another issue that the courts have indicated is a factor
 that it must consider on the prejudicial side. And whether or not it eclipses or
 overshadows the evidence of the crime charged, the Court would note for the record
 that the testimony of [M.O.] was less than ten minutes. We’ve spent far more time
 arguing about whether or not to let it in than—than the actual testimony would take.
 And, of course, the manner in which the State uses the evidence and the State should
 not be allowed to use an undue amount of time on the evidence, again that goes to
 the ten-minute testimony.

 The Court has also looked at the lapse of time, which I think is approximately
 ten years. But, again, when you’re looking at the lapse of time you look at the
 similarity of the events, and the events are very, very similar.

 4
 The Court is going to find that the evidence is both logically and legally
 relevant, and that the probative value of the evidence is not substantially
 outweighed by the danger of unfair prejudice.

 At trial, M.O. (who was 16 years old at the time) testified as the State’s final witness

consistent with her pretrial hearing testimony. Her testimony (both direct and cross-examination)

comprised a total of ten pages of the 435-page transcript. Davison sought to question M.O. about

prior sexual assault allegations M.O. made that he alleged were false and negatively affected

M.O.’s credibility, but the trial court did not allow it, so he instead made an offer of proof by

questioning M.O. outside the presence of the jury. The offer of proof consisted of the following:

 Q. Hi, [M.O.]. [M.O.], you claimed in the past to have been drugged and raped by
 former aunts and their family.

 A. Yes.

 Q. Okay.

 A. Yes.

 Q. Because this is being recorded, it’s—there’s not a court reporter.

 A. Sorry.

 Q. There were eight people involved?

 A. Yes.

 Q. You’ve claimed that you had a cousin that was forced to rape you in that
 incident?

 A. Yes.

 Q. He was initially hiding under the bed?

 A. Yes.

 Q. You were pretty much unconscious the whole time?

 A. Yes.

 5
 Q. You reported this incident to the Division of Family Services?

 A. Yes.

 Q. And they had a worker that you believed was involved in those rapes?

 A. Yes.

Davison offered no further evidence to support his assertion that M.O.’s prior allegations were

false. The trial court denied Davison’s offer of proof.

 The jury found Davison guilty as charged, and the trial court sentenced him to concurrent

terms of eighteen years’ imprisonment on each child molestation count, and a consecutive

four-year term on the incest count for a total of twenty-two years’ imprisonment. Davison appeals.

 Analysis

 Davison raises two points on appeal. First, he argues that the trial court abused its

discretion in admitting propensity evidence from M.O. Second, he argues that the trial court

abused its discretion in denying his offer of proof with respect to M.O.’s prior sexual assault

allegations against other people. Finding no error, we affirm.

 I. Standard of Review

 Both of Davison’s points allege evidentiary error. “The circuit court’s decision to admit

evidence . . . under article I, section 18(c), like all claims of evidentiary error, is reviewed for an

abuse of discretion.” State v. Williams, 548 S.W.3d 275, 287 (Mo. banc 2018). “The circuit court’s

evidentiary ruling ‘will not be disturbed unless it is clearly against the logic of the circumstances.’”

Id. (quoting State v. Prince, 534 S.W.3d 813, 818 (Mo. banc 2017)). “[I]f reasonable persons can

differ about the propriety of the action taken by the trial court, then it cannot be said that the trial

court abused its discretion.” Id. (quoting Anglim v. Mo. Pac. R.R. Co., 832 S.W.2d 298, 303

(Mo. banc 1992)).

 6
 II. The trial court did not abuse its discretion in allowing propensity evidence.

 In his first point, Davison argues that the trial court abused its discretion in admitting

propensity evidence under § 18(c) of the Missouri Constitution in the form of M.O.’s testimony.

We disagree.

 Section 18(c) provides:

 Notwithstanding the provisions of sections 17 and 18(a) of this article to the
 contrary, in prosecutions for crimes of a sexual nature involving a victim under
 eighteen years of age, relevant evidence of prior criminal acts, whether charged or
 uncharged, is admissible for the purpose of corroborating the victim’s testimony or
 demonstrating the defendant’s propensity to commit the crime with which he or she
 is presently charged. The court may exclude relevant evidence of prior criminal
 acts if the probative value of the evidence is substantially outweighed by the danger
 of unfair prejudice.

Mo. Const. art. I, § 18(c).

 “Before propensity evidence can be said to have any probative value, it must be sufficient

for the jury to conclude the defendant actually committed the prior criminal act.” Williams, 548

S.W.3d at 288. And the evidence “must tend to show the defendant actually had a propensity to

commit the charged crime at the time it is alleged to have occurred.” Id. at 289. In determining

whether the evidence demonstrates a propensity, there is an inverse relationship between the

similarity of a prior criminal act and the amount of time that has elapsed between the prior and the

charged acts. Id. “For example, an inference of propensity might be proper notwithstanding a

significant time lapse between the prior crime and the charged crime if the two crimes are highly

similar.” Id. “On the other hand, an inference of propensity might not be proper if the prior crime

and the charged crime are only somewhat similar unless the two occurred over a short span of

time.” Id. “Finally, in determining the probative value of a particular item of propensity evidence,

courts have looked to the prosecution’s need for that evidence to prove its case.” Id.

 7
 Here, the propensity evidence had probative value. To begin, the jury had sufficient

evidence through M.O.’s testimony from which it could conclude that Davison actually committed

the alleged prior act. Second, M.O.’s testimony demonstrated Davison’s propensity to engage in

deviate sexual intercourse with young girls. Though the prior act was about ten years before the

charged acts, they were nevertheless quite similar, as the trial court found. Both involved

four-year-old girls who were taken into bedrooms by Davison, where he then put his penis in their

mouths. Finally, as the trial court found, the State had an appreciable need for the evidence given

that there was no forensic or scientific evidence corroborating Victim’s allegations, and the State’s

primary evidence came from statements of a four-year-old child. Thus, the trial court did not err

in finding that the propensity evidence had probative value.

 “Probative value, however, is only one side of the scale. The other side is the risk of unfair

prejudice.” Id. at 290.

 Some of the factors bearing on the prejudicial effect of propensity evidence are:
 “[1] whether the jury knows or can fairly infer the defendant was punished for his
 past criminal acts. . . . [2] the manner in which the [S]tate proves the prior criminal
 act at trial. . . . [3] whether the evidence of the defendant’s prior criminal act
 eclipses—or is overshadowed by—the evidence of the charged crime. . . . [and] [4]
 the manner in which the [S]tate uses the evidence at trial.”

State v. Banks, 582 S.W.3d 919, 925-26 (Mo. App. E.D. 2019) (quoting Williams, 548 S.W.3d at

290-91).

 Here, the prejudicial effect inherent in all propensity evidence did not substantially

outweigh the probative value of M.O.’s testimony. As the trial court noted, “It’s very obvious here

that the defendant, if they believe that he committed the past act, was never punished for it.”

Additionally, the trial court considered the fact that “this is live testimony, which is another issue

that the courts have indicated is a factor that it must consider on the prejudicial side.” But the trial

court also noted that “the testimony of [M.O.] was less than ten minutes,” and the attorneys had

 8
“spent far more time arguing about whether or not to let it in than—than the actual testimony

would take.” The trial court noted that the ten-minute length of the testimony favored a

determination that its prejudicial effect did not substantially outweigh its probative value. We

agree.

 Though live testimony of a prior victim increases the potential for prejudice, that potential

is limited where the testimony is “only as elaborate as . . . necessary to describe the incident and

illustrate the similarities between” the prior and charged acts. Id. at 926. M.O.’s testimony was

limited to a brief description of Davison’s prior act against her and the surrounding circumstances.

Thus, it did not exceed what was necessary to describe the incident and establish the similarity

with Davison’s acts against Victim. And, as the trial court noted, her substantive testimony about

the prior act was very brief—spanning about four pages total—and therefore certainly did not

eclipse the evidence of the charged crime. Furthermore, the manner in which the State used M.O.’s

testimony was appropriate. The State used her testimony solely to establish Davison’s propensity

to engage in deviate sexual intercourse with young girls, as evidenced by the brief questioning of

M.O. and the fact that the prosecutor spoke only two sentences in all of closing argument about

M.O.’s testimony. Finally, while the fact that the jury likely assumed that Davison was not

punished for his act against M.O., this is but one factor to consider in the overall balancing test

and is not determinative. In short, though M.O.’s testimony was likely prejudicial to Davison’s

case, the prejudice did not substantially outweigh its probative value. Therefore, the trial court did

not abuse its discretion in allowing admission of M.O.’s testimony.

 Point I is denied.

 9
 III. The trial court did not abuse its discretion in excluding evidence of M.O.’s prior
 sexual assault allegations against other people.

 In his second point on appeal, Davison argues that the trial court abused its discretion in

excluding evidence about prior sexual assault allegations made by M.O. Davison contends that

the evidence was relevant to directly challenge M.O.’s credibility and was, therefore, admissible.3

We disagree.

 “Where . . . a witness’[s] credibility is a key factor in determining guilt,” evidence that the

witness made a prior false allegation “is highly relevant to a crucial issue directly in

controversy[—]the credibility of the witness.” State v. Long, 140 S.W.3d 27, 30-31 (Mo. banc

2004). To be admissible, the evidence of a prior false allegation must satisfy the legal relevance

balancing test, where the probative value outweighs potential prejudice. Id. at 31. And “[t]he

relevance of the prior false allegation is . . . derived primarily from the fact that the allegation was

false . . . .” Id. Thus, before evidence of a prior false allegation is admissible, the proponent must

show both that the allegation was false and that the declarant knew it was false. Id. at 31-32. If

the proponent fails to show that the prior allegation is, in fact, false, there is no error in excluding

the evidence. State v. Abbott, 412 S.W.3d 923, 929 (Mo. App. S.D. 2013).

 Here, evidence of M.O.’s prior sexual assault allegations against other people was

inadmissible because Davison showed neither that the allegations were false nor that M.O. knew

them to be false. Davison argues, as he did below, that M.O.’s allegations are simply too

outlandish to be true. Though M.O.’s allegations were unusual, that alone does not render them

false as a matter of law, and Davison provides us no authority indicating otherwise.

 3
 Davison also contends, in response to the prosecutor’s argument below, that this evidence was not barred
by § 491.015 (commonly known as the Rape Shield Statute) because the statute was inapplicable. Although the trial
court mentioned a “statute” in its ruling, the crux of its ruling was that Davison had failed to prove that M.O.’s prior
allegations were false, which is an independent basis for the court to have excluded the evidence; thus, we need not
consider whether § 491.015 applies under these circumstances.

 10
 “[A] prior report of sexual abuse that [is not shown to be] false does not ‘speak to,’ does

not ‘b[ear] on,’ and is not ‘relevant’ to the ‘ultimate issue of a witness’s credibility.’” Id. at 929-30

(quoting Mitchell v. Kardesch, 313 S.W.3d 667, 677-79 (Mo. banc 2010)). And if the proponent

of the evidence fails to show the falsity of the prior allegation, then he is “not entitled either to

cross[-]examine [the witness] about her prior report of sexual abuse or to introduce extrinsic

evidence of that report for the purpose of impeaching [the witness’s] credibility” because, without

evidence of falsity, “the report [i]s neither logically nor legally relevant to discrediting [the

witness’s] credibility.” Id. at 930.

 In short, Davison failed to prove that M.O.’s prior allegations were false; therefore, he

failed to establish either logical or legal relevance of the challenged evidence. The trial court did

not abuse its discretion in excluding evidence of M.O.’s prior allegations.

 Point II is denied.

 Conclusion

 The trial court did not abuse its discretion in either admitting evidence that Davison had

engaged in a similar act with M.O. or excluding evidence of M.O.’s prior sexual assault allegations

against other people. Its judgment is affirmed.

 Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Alok Ahuja, Judge, concur.

 11